**Ann R. CORNWELL and Ervin C. Cornwell, her husband, Plaintiffs Below, Appellants,**

**v.**

**Robert Carl RUHL, Jr., a minor under the age of 21 years, by his Guardian Ad Litem, Edith Benson Ruhl, and Edith Benson Ruhl, Individually, Defendants Below, Appellees.**

Supreme Court of Delaware.

Jan. 19, 1970.

Reargument Denied Feb. 7, 1970.

James P. D'Angelo, Wilmington, for appellants.

F. Alton Tybout of Tybout & Redfearn, Wilmington, for appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

■ This is an appeal in a personal injury case from the denial of plaintiffs' motion for a directed verdict, and after the jury's verdict for the defendant, the denial of their motion for judgment N.O.V. or, in the alternative, for a new trial.

The denial of plaintiffs' motions requires us to regard the facts in the light most favorable to defendant. Thus, it appears that plaintiffs were riding as passengers in a car proceeding northerly on the Concord Pike. It was about 9:00 p. m. on September 2, 1967. The defendant, at the same time, was proceeding southerly on the Concord Pike. The two cars approached the intersection of the Concord Pike with Naaman's Road. This intersection is controlled by a traffic light.

The defendant, intending to turn left on Naaman's Road, pulled into the left-hand turn lane and stopped behind a car ahead of him. At this time, the traffic light was green for north and south traffic on Concord Pike and for a left-hand turn into Naaman's Road. The light turned to amber and the car in front of the defendant made its turn, and the defendant looked to the south, saw nothing coming, and started his turn while the light was still amber. When the defendant was about to leave the intersection and enter Naaman's Road, his car was struck by the plaintiffs' car.

There is testimony in the record by one disinterested witness traveling north on Concord Pike intending to turn right on Naaman's Road. He looked in his rear-view mirror and saw nothing coming north on Concord Pike approaching the intersection. He slowed down to make a right turn into Naaman's Road in obedience to a yield sign to permit two cars to turn left from the southerly lane of Concord Pike into Naaman's Road. He testified further that the plaintiffs' car came "out of nowhere" and struck the defendant's car. The impact lifted both cars from the ground and turned them 180°.

Another disinterested witness traveling east and intending to cross through the intersection, stopped for a red light stopping east-west traffic. His attention was drawn to the plaintiffs' car and he saw the accident. He immediately looked at the light and saw that it had turned green for him.

There is apparently a rise in the northbound lane of Concord Pike as it approaches the intersection which limits the view from the intersection of northbound traffic. There is some dispute in the testimony, but it seems plain that the jury could have found that the defendant could have seen a vehicle approaching in that lane a distance of from 440 to 591 feet.

The main thrust of the plaintiffs' argument is that the defendant under any version of the facts must necessarily be held to be negligent in the particulars—first, that he failed to keep a proper lookout and,

had he done so, would have seen the plaintiffs' car in time to avoid the accident; and, second, that he failed to comply with 21 Del.C. § 4132, which requires a person making a left turn to yield the right of way to a vehicle approaching from the opposite direction so close as to create a hazard.

Plaintiffs point out that any negligent conduct on the part of the driver of the car in which they were riding as passengers may not be imputed to them so as to bar recovery. They argue that the defendant admitted his negligence when he testified that he looked to the south and saw nothing approaching and then entered into the intersection. How, they ask, can he now be heard to say that his negligence did not cause the accident, since the plaintiffs' car was there to be seen and yet the defendant did not see it?

We note, however, that there is apparently no testimony which placed the plaintiffs' car within sight from the intersection, or at least there is no such evidence reproduced in the plaintiffs' appendix. Under this situation, therefore, the jury could have found that the plaintiffs' car was in fact not in sight when the defendant started his turn. He cannot, therefore, be charged with failing to keep a proper lookout, or with the statutory violation, if the jury so found.

We think the question of negligence in this case was a proper one for submission to the jury. It could have found that the plaintiffs' car was proceeding at a high rate of speed by inference from the nature of the impact. Indeed, it would be difficult to conclude otherwise. If this conclusion is reached, then the burden of proving that plaintiffs' car was there to be seen was upon the plaintiffs. They have failed to meet this burden.

Plaintiffs rely principally on Wootten v. Kiger, Del., 226 A.2d 238, a decision of this court affirming the entry of summary judgment for a defendant on the ground that the plaintiff was contributorily negli-

gent as a matter of law. In that case, however, the plaintiff looked to her left and failed to see the defendant's vehicle as she entered an uncontrolled intersection. It was plain that the defendant's vehicle was approaching the intersection and that plaintiff had an unobstructed view of it. Her failure to see what was there to be seen was therefore negligence. Since the facts permitted reasonable persons to draw only this conclusion, she was held to be guilty of negligence as a matter of law.

The facts at bar are different. In *Wootten*, the defendant's car was definitely proven to be approaching the intersection in plain view. The plaintiff had an unimpeded view and, yet, failed to see what was there to be seen. In the case at bar, it was possible for reasonable persons to conclude that plaintiffs' car was not in view at all when defendant started to make his turn.

Therefore, it was not error to refuse plaintiffs' motions for a directed verdict.

In addition, plaintiffs argue that error was committed by the trial judge in his post-trial decision denying the entry of judgment for the plaintiffs notwithstanding the verdict, or for a new trial. The argument would seem to be academic in view of our decision that the facts of the case presented a jury question as to the negligence of the defendant. We accordingly decline to rule on all but one of the points made.

■ We will rule on plaintiffs' contention that a witness testified that plaintiffs' car was traveling at a high rate of speed at the time of impact and that the witness had not been qualified as an expert as to vehicular speed. As a matter of fact, the witness at no time testified to an estimate of the speed of plaintiffs' car. His testimony was that plaintiffs' car came "out of nowhere" and struck the defendant's car with sufficient force to cause both vehicles to turn 180°. We think it a justifiable inference that plaintiffs' car was traveling fast.

It is to be noted that this witness was called as an eye-witness of the accident and not as an expert. Indeed, only in the course of his direct examination did it come out, apparently to the surprise of defendant's counsel, that he might have a claim to be an expert. The witness is employed in the Delaware schools to teach driver education and safety. He holds a bachelor's degree in mathematics and physics, the equivalent of a master's degree in traffic safety, and is currently working on a doctorate.

At any rate, he was not called to testify as an expert and did not do so. His testimony concerned the circumstances of the accident as he saw them at the time. It was only later, and apparently inadvertently, that his qualifications came out. There was no error in the admission of his testimony.

In summary, we think this record raised a question of fact to be determined by the jury. The jury has done this and we will not disturb its verdict.

The judgment below is affirmed.